IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

PAMELA SAIA                                                    PLAINTIFF

v.                          No. 2:22-cv-169-DPM

DOLGENCORP, LLC                                           DEFENDANT

## ORDER

The *voir dire* and preliminary instructions are locked in without objection. They're attached. The final instructions and verdict form will continue to hang fire until the proof is in.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

_____
4 April 2024

# (1) *VOIR DIRE*

**A.**    Preliminaries

- Thank you for serving.  Echo "Called to Serve."

- A morning of speaking the truth, *voir dire* = eight people good and true.

- Two, maybe three days.

- Urgent or extraordinary obligations?

- Rules of the Road:

   - Can I be completely fair and impartial?

   - Can I decide the case based solely on the evidence seen and heard in this courtroom, the law as explained by the Court, and my common sense?

   - Questions and Answers.  You = you and your immediate family.

   - Raise your hand, state your name, and answer.

- Can answer at the bench if uncomfortable answering a particular question in front of others.

- Notepads?

- Questionnaires.   Summary.   Confirm lawyers have.

- Case Sketch—Not evidence, just background

- This is a civil case.  It involves an incident that occurred at the Dollar General Store in Elaine, Arkansas in October 2020.  Pamela Saia tripped over a box that was on the floor.  Ms. Saia says that she suffered injuries as a result of her fall.  She claims that she fell because of Dolgencorp's negligence and seeks to recover damages for her injuries.  Dolgencorp denies that it was negligent and says that Ms. Saia was at fault for her fall.

Dolgencorp also claims that the box she tripped on was open, obvious, or known to her.

- Introductions

  - Plaintiff  =  Pamela Saia

  - Plaintiffs' Lawyer =  Donald E. Knapp, Jr.

  - Defendant = Dolgencorp, LLC

  - Defendant's Lawyers =  Laura L. O'Hara   and Thomas G. Williams

  - Potential Witnesses:

    i.  Pamela Saia

    ii.  Cheryl Moore

    iii.  Amy Schwantz

    iv.  Rosemary Lumpkin

    v.  Tiffany Miller

    vi.  Takevia King

- Know the parties?  Lawyers?  Witnesses?

- Anyone know anything about this case?

**B.**   General Background Questions

- Know other panel members?

- Legal training or experience?  Deal with the law regularly through work?

- Prior jury service?

- Prior court experience?  Sued or been sued?  Witness?

- Religious convictions against sitting in judgment?

- Negative feelings about civil justice system?

   - Too many lawsuits?

   - If sue, then win?

- Follow the law even if…?

**C.**    Case-Specific Questions

**Remember, answer about you and your immediate family; approach to answer sensitive questions**

- Anyone ever worked at a grocery store?  A dollar store?  A department store?

- Ever worked for Dollar General?  Ever worked regularly with Dollar General?

- Any prior experience or connection with Dollar General?

- Anyone ever had a shoulder injury?  A long-term, nagging injury?

- Anyone ever been injured while shopping at a business?  While working for a business?

- Ever been injured by someone or at a business, but not sought any recovery?

- Ever been injured by someone or at a business and settled without a lawsuit?

- Anyone have any opinions about money damages— money to compensate for injury? Comfortable awarding pain and suffering damages?

- Any experience in your life that this case has reminded you of?

**D.**   Juror Question Time

- News Sources?

- Bumper Stickers?

- Hobbies?

- Social Media?

Court's *Voir Dire*                                    2:22-cv-169-DPM
4 April 2024                    - 7 -            *Saia v. Dolgencorp, LLC*

- Movie or Book?

- Favorite TV Show?

**E.**   The Unasked Question?

**F.**   Lawyers' Follow-Up Questions?  Fed. R. Civ. P. 47(a).

**G.**   Strikes for Cause.  Fed. R. Civ. P. 47(c).[*]

---

[*] **Rule 47. Selecting Jurors**

(a) EXAMINING JURORS. The court may permit the parties or their attorneys to examine prospective jurors or may itself do so. If the court examines the jurors, it must permit the parties or their attorneys to make any further inquiry it considers proper, or must itself ask any of their additional questions it considers proper.

(b) PEREMPTORY CHALLENGES. The court must allow the number of peremptory challenges provided by 28 U.S.C. § 1870.

(c) EXCUSING A JUROR. During trial or deliberation, the court may excuse a juror for good cause.

*Allen v. Brown Clinic,* **531 F.3d 568, 572 (8th Cir. 2008).**
"To challenge a juror for cause, a party must show actual partiality growing out of the nature and circumstances of the case. A district court is required to strike for cause any juror who is shown to lack impartiality or the appearance of impartiality, and,

**H.**   Peremptory Challenges.  Fed. R. Civ. P. 47(b).**

- Three each side.

- Challenging Strikes.  Race or Gender?  *Batson*.***

---

absent abuse of discretion, we will not interfere with the district court's determination of juror qualifications. The district court is given broad discretion in determining whether to strike jurors for cause because it is in the best position to assess the demeanor and credibility of the prospective jurors."

** **28 U.S.C. § 1870**

"In civil cases, each party shall be entitled to three peremptory challenges. Several defendants or several plaintiffs may be considered as a single party for the purposes of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly.

All challenges for cause or favor, whether to the array or panel or to individual jurors, shall be determined by the Court."

*** **Three-part test**.

"In order to succeed on a *Batson* challenge, a party must satisfy a three-part test. First, an objecting party must make a *prima facie* showing that a peremptory challenge was made on the basis of race. Second, if a *prima facie* showing has been

**I.**   Seat and Swear Jury.

"You and each of you do solemnly swear or affirm to well and truly try the matter now on trial and render a true verdict according to the law and the evidence."

**J.**   Thanks and Goodbye *venire*.

---

made, the party striking the juror must offer a race-neutral basis for striking the juror in question. Third, the trial court must determine whether the objecting party has proven the ultimate question of purposeful discrimination. . . .  We . . . strongly urge the district courts to make on-the-record rulings articulating the reasoning underlying a determination on a *Batson* objection." *Cook v. City of Bella Villa*, 582 F.3d 840, 854 (8th Cir. 2009).

# (2) PRELIMINARY INSTRUCTIONS

# 1.

Ladies and gentlemen, here are some first instructions about your duties as jurors.  I may give you more as we go along.  I will give you more instructions at the end of the trial.  Follow all my instructions no matter when I give them.

I'm the judge of the law, you're the judges of the facts.  It's your duty to determine the truth from the evidence and the reasonable inferences arising from the evidence.  You must not engage in guess work or speculation.

This is a civil case.  It involves an incident that occurred at the Dollar General store in Elaine, Arkansas in October 2020.  Pamela Saia tripped over a box that was on the floor at the end of an aisle.  Ms. Saia says that she suffered injuries as a result of her fall.  She claims that she fell because of Dolgencorp's negligence and seeks to recover damages for her injuries.  Dolgencorp denies that it was negligent and says that Ms. Saia was at fault for her fall.  Dolgencorp also claims that the box she tripped on was open, obvious, or known to her.

In order to help you follow the evidence, I will give you a brief summary of the elements that Saia must prove.  What I am about to give you is only a preliminary outline.  At the end of the trial, I will give you final instructions on these matters.  If there is any difference between what I'm going to tell you now and what I tell you in the instructions I give you at the end of the trial, then you must follow the instructions given at the end of the trial.

Saia says that she was injured when she tripped over a box on the floor of Dollar General.  This claim has three elements, which are:

*One*, that she has sustained damages;

*Two*, that Dolgencorp was negligent;  and

*Three*, that Dolgencorp's negligence was the proximate cause of her damages.

From all the evidence, you will decide what the truth is. Consider all the evidence in the light of your own observations and experiences in the affairs of life.  Use reason and common sense to draw conclusions from facts established by the evidence. That's how you reach your verdict.  You're the sole judges of the

facts, but you must follow the law, as I explain it to you, whether you agree with that law or not.

Do not allow any sympathy or any prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.

Don't take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.

**2.**

"Evidence" includes the testimony of witnesses, documents, and other things received as exhibits.  Evidence also includes any facts that have been stipulated—that is, formally agreed—by the parties.  Evidence also includes any facts that have been judicially noticed—that is, facts which I say you must accept as true even without evidence.

Certain things are not evidence:

1.    Statements, arguments, questions, and comments by lawyers are not evidence.

2.    Objections are not evidence.  Lawyers have a duty to object when they believe something is improper.   Don't be influenced by the objection.  If I sustain an objection to a question, ignore the question.  And don't try to guess what the answer might have been.

3.    Testimony that I strike from the record, or tell you to disregard, is not evidence.  Ignore it.

4.    Anything you see or hear about this case outside the courtroom is not evidence.  Ignore it.

A particular item of evidence is sometimes received for a limited purpose.  That is, it can be used by you only for one particular purpose, and not for any other purpose.  I will tell you if this occurs, and give you some instructions.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence."  Don't be concerned with those terms.  The law makes no distinction between direct and circumstantial evidence.  Give all evidence the weight and value you believe it is entitled to receive.

**3.**

In deciding what the facts are, you must decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness says, only part of it, or none of it.

In deciding what testimony of any witness to believe, consider several things:  the witness's intelligence;  the opportunity the witness had to have seen or heard the things testified about;  the witness's memory;  any motives the witness may have for testifying a certain way;  the manner of the witness while testifying;  whether that witness said something different at an earlier time;  the general reasonableness of the testimony;  and the extent to which the testimony is consistent with other evidence that you believe.

A caution about considering a witness's demeanor while testifying.  Many folks are nervous just being in court.  And there are bold liars and shy truth-tellers.  Use your common sense and be discerning when judging someone's credibility based on their demeanor on the stand.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things.  You need to consider therefore whether any contradiction is an innocent misrecollection or lapse of memory or a lie.  That may depend on whether the contradiction has to do with an important fact or a small detail.

**4.**


The burden of proving a fact is on the party whose claim or defense depends upon that fact.  The party must prove facts by a preponderance of the evidence.   To prove something by a "preponderance of the evidence" is to prove that it is more likely true than not true.  It is determined by considering all of the evidence and deciding which evidence is more believable. The preponderance of the evidence is not necessarily established by the greater number of witnesses or exhibits a party has presented.  Ms. Saia — who brought this case — has the burden of proof.  If the evidence is equally balanced, then Saia has not carried her burden.

You've probably heard of the term "proof beyond a reasonable doubt."  This is a stricter standard, which applies in criminal cases.  It does not apply in civil cases like this one.  Put the reasonable-doubt standard out of your minds.

**5.**

When the lawyers have finished questioning each witness, you may propose questions to clarify the testimony.  In your questions, follow these rules:

- Don't express any opinion about the testimony;

- Don't argue with a witness; and

- Don't sign your name or juror number.

Submit your questions in writing by passing them to the court security officer.  I will review each one with the lawyers.  If the question is proper, I will ask it.

Don't put any special weight on a question just because a juror suggested it.  Don't put any special weight on the question because I may be the one asking it.  And consider the witness's answer just like any other piece of evidence.

You may not get your question answered.  For example, I may decide that the question is not proper under the rules of evidence. And even if the question is proper, you may not get an immediate answer.  For example, a later witness or a coming exhibit may provide the answer.

Don't feel slighted or disappointed if your question isn't asked or answered immediately.   Remember, you are not advocates for either side;  you are impartial judges of the facts.

**6.**

At the end of the trial you must make your decisions based on what you remember of the evidence.  You will not have a written transcript to consult.  You must therefore pay close attention to the testimony.

You may take notes to help you remember what witnesses said.  If you do, keep your notes to yourself.  Don't share them with your fellow jurors during the trial.  When you go to the jury room to deliberate and decide the case at the end of the trial, then you can share them with each other.  And do not let note taking distract you so that you do not hear other answers by the witness.

When you leave at night, your notes will be locked up.  No one will read them.  At the end of the trial, all notes will be destroyed.

## 7.

During the trial, from time to time I'll have to talk just to the lawyers. We'll have a bench conference or a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is to discuss certain evidence questions, and to avoid confusion and error. We'll keep the number and length of these conferences to a minimum.

**8.**

Finally, to ensure fairness, you as jurors must obey the following rules:

*First*, do not talk among yourselves about this case, or about anyone involved with it, until the end when you go to the jury room to decide on your verdict.

*Second*, do not talk with anyone else about this case, or about anyone involved with it, until the end of the trial after I've discharged you as jurors.

*Third*, when you are outside the courtroom, don't let anyone tell you anything about the case, or about anyone involved with it, until the trial has ended and I've discharged you as jurors. If someone should try to talk to you about the case during the trial, report it to the court security officer immediately.

*Fourth*, during the trial don't talk with any of the parties, lawyers, or witnesses involved in this case—don't even pass the time of day with any of them.  It is important not only that you do justice, but that you also appear to do justice.  If a person from one side of the lawsuit sees you talking to a person from the other side

of the lawsuit, a suspicion about your fairness might arise. I suspend the rules of good manners.  Please ignore the lawyers, parties, witnesses, me, and my staff outside the courtroom.

*Fifth*, you'll have to tell your family, friends, teachers, coworkers, or employer that you've been selected as a juror and must be in federal court.  Warn them not to ask you for details. Don't name the case, the parties, or tell them what it's about. Don't listen to anything someone may say to you, or in your presence, about the case.  You must not communicate with anyone about the parties, witnesses, participants, claims, evidence, or anything else about the case, or tell anyone anything about the jury's deliberations in this case, until after I accept your verdict.

During the trial, while you are in the courthouse, and after you leave for the day, do not provide any information to anyone by any means about this case.  For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell phone, a smart phone, iPad, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, Instagram, Snapchat,

YouTube, or X (formerly known as Twitter), to communicate to anyone any information about this case until I accept your verdict.

*Sixth*, don't do any Internet research—using Google, for example—about the case.  Don't do any research using libraries, reading the newspaper, or in any other way making any investigation about this case on your own.  Don't visit or view any place discussed in this case.  Don't use Internet maps or Google Earth or any other program or device to search for or to view any place discussed in the testimony.   And don't research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or me.

**Ask each juror:  Juror No. —, on your oath, do you promise not to post anything about your jury service on any social media website such as Facebook, X, Instagram, or the like during the trial?  On your oath, do you promise not to use the Internet to look up anything about the case, the matters discussed, the lawyers, any of the people or companies involved in the case, me, or the law?**

*Seventh*, during the trial, don't read any news articles in print or on the Internet about the case or about anyone involved with it, and don't listen to any radio or television report about the case or

about anyone involved with it.  In fact, until the trial is over I suggest that you take a news holiday:  avoid reading newspapers; avoid watching TV news;  avoid radio newscasts;  and avoid news on the Internet.  If you receive push notification on your phone from news outlets or other sources, do your best to turn them off. I also suggest that you avoid social media, such as Facebook and X.  I don't know whether there will be any publicity about this case. But if there is, you might stumble into reading or listening to something before you could do anything about it.  I assure you:  by the time you've heard all the evidence in this case, you'll know more about it than anyone could learn through the news media or on the Internet.

The reason for all these rules is to protect the integrity of the trial.

**9.**

Here is how the trial will go:

First, a lawyer for each side will make an opening statement. This is not evidence. The opening statement is a non-argumentative summary of what the lawyer expects the evidence to be.

Next, Saia's lawyers will present evidence by calling witnesses, and Dolgencorp's lawyers may cross-examine them. After Saia's case, Dolgencorp's lawyers will present evidence by calling witnesses, and Saia's lawyers may cross-examine them. Finally, Saia's lawyers may offer rebuttal evidence.

After all the evidence is in, I'll give you some final instructions. Then the lawyers will make their closing arguments. They'll summarize and interpret the evidence for you. But, closing arguments are not evidence. After the close, you'll go to the jury room to deliberate on your verdict.

# (3) FINAL INSTRUCTIONS

**1.**

Follow all the Court's instructions.  Written and spoken instructions are equally important.  And it doesn't make any difference when I gave an instruction.  Follow them all.

**2.**

Your job is to decide what happened.  Don't take anything I said or did as a suggestion about what your decision should be. You're the judges of the facts, not me.

**3.**

Don't decide the case based on sympathy, prejudice, or emotion.  Decide based on the evidence, the law, and your common sense.

**4.**

The evidence is the witnesses' testimony, the exhibits, and any facts agreed by the parties.  Anything the lawyers said (such as questions, statements, arguments, and objections) is not evidence.  If I told you to disregard something, ignore it.  If you saw or heard something about this case outside the courtroom, ignore that, too.  If I told you some evidence could be used only for a limited purpose, do so.

**5.**

Be careful in evaluating each witness's credibility.  Use your life experience and your common sense in deciding what testimony you believe.

**6.**

With an important exception, which I'll cover in a moment, Saia has the burden of proof. She must prove her claim, and any damages, by a preponderance of the evidence. That means Saia must prove that the facts she asserts are more likely true than not true. If the evidence is equally balanced, then Saia has not carried her burden. Saia need not prove anything beyond a reasonable doubt. That's the standard for a criminal case, not a civil case like this one.

**7.**

It is undisputed that Saia tripped over a box on the floor at Dollar General.

To win on her claim for damages, Saia has the burden of proving three things:

*First*, that she has sustained damages;

*Second*, that Dolgencorp was negligent;  and

*Third*, that Dolgencorp's negligence was the proximate cause

of her damages.

### 8.

Next, the exception.   Dolgencorp claims that Saia was

negligent in tripping over the box and that her negligence was the

proximate cause of her injuries.   Dolgencorp has the burden of

proving this by a preponderance of the evidence.

### 9.

When I use the word "negligence" in these instructions I

mean the failure to do something which a reasonably careful

person would do, or the doing of something which a reasonably

careful person would not do, under circumstances similar to those

shown by the evidence in this case.

**10.**

A failure to exercise ordinary care is negligence.  When I use the words "ordinary care," I mean the care that a reasonably careful person would use in circumstances similar to those shown by the evidence in this case.  It is for you to decide how a reasonably careful person would act under those circumstances.

**11.**

It was the duty of all persons involved in the occurrence to use ordinary care for their own safety and the safety of others.

**12.**

Every person using ordinary care has a right to assume, until the contrary is or reasonably should be apparent, that every other person will use ordinary care.  To act on that assumption is not negligence.

**13.**

The law frequently uses the expression "proximate cause," with which you're probably not familiar.  "Proximate cause," means a cause which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred.

**14.**

The fact that an incident occurred is not, of itself, evidence of negligence on the part of anyone.

**15.**

Dolgencorp owed Saia and the public a duty to use ordinary care to maintain its premises in a reasonably safe condition.  To establish a violation of this duty, Saia must prove either:

(a) that the presence of the box was the result of Dolgencorp's failure to use ordinary care;  or

(b) *First*, that Dolgencorp knew of the box's presence or that the box had been on the floor for such a length of time that Dolgencorp should have known of its presence;  and

*Second*, that Dolgencorp failed to use ordinary care to remove the box.

Dolgencorp owed no such duty to Saia if the box was known by or obvious to Saia.

## 16.

Compare Saia's and Dolgencorp's negligence.  If Dolgencorp was solely responsible for the incident, then Saia wins.  If Saia was solely responsible, then Dolgencorp wins.  If Saia and Dolgencorp were equally negligent, then Dolgencorp wins.  If Dolgencorp was more negligent than Saia, then Saia wins—but you must reduce your award of incident-related damages by her percentage of negligence.

**17.**

If Saia wins on the comparison of the parties' negligence, then you must decide the amount of money that will reasonably and fairly compensate her for damages you find were proximately caused by Dolgencorp's negligence.  There are four elements to consider. Whether any of these elements of damage have been proved by the preponderance of evidence is for you to determine. Here they are:

> *First*, the nature, extent, duration, and permanency of any injury.

> *Second*, the reasonable expense of any necessary medical care, treatment, and services received and the present value of such expense reasonably certain to be required in the future.

> *Third*, any pain, suffering, and mental anguish experienced in the past and reasonably certain to be experienced in the future.

And remember, you must reduce any damages awarded to Saia by the percentage of her negligence, if any.

## 18.

Here are some rules for your deliberations.

*First*, choose a foreperson.  She or he will preside over your deliberations, sign your verdict, and speak for you here in court.

*Second*, talk through the case in detail.  Consider all the evidence.  Discuss it fully with your fellow jurors.  And listen attentively to others' views.

*Third*, make your own conscientious decision.  Don't be afraid to change your mind if you're persuaded by the discussion.  But don't make a decision simply because others think it is right.  And don't agree just to get done.

*Fourth*, try hard to reach agreement.  Your verdict must be unanimous.

*Fifth*, if you need to communicate with me during your deliberations, send me a note through the Court Security Officer. One or more jurors must sign the note.  But, do not tell me—or anyone—how your votes stand numerically.

*Sixth*, your verdict will be answers to some questions.  I'll read them to you now.

## VERDICT NO. 1

1.  On Saia's negligence claim against Dolgencorp, LLC, we find for:

   _____ Saia

   _____ Dolgencorp, LLC

**If you found for Saia in Question 1, then answer Question 2.  If you found for Dolgencorp, LLC in Question 1, then your deliberations are done.**

2.  We find Saia's compensatory damages to be:

   $_____

**Please sign and date this form.**

_____        _____
       Foreperson                        Date/time

*Seventh*, from this point forward, other than a note to the Court, do not communicate with any person other than your fellow jurors about the merits of the case.

## OATH

Court security officer, do you solemnly swear or affirm to keep this jury together in the jury room, not to permit any person to speak to or communicate with them about this case, nor to do so yourself unless by order of the Court or to ask whether they have agreed on a verdict, and return them into the courtroom when they have so agreed, or when otherwise ordered by the Court?

**(4) VERDICT NO. 1**

1.      On Saia's negligence claim against Dolgencorp, LLC, we
        find for:

        _____ Saia

        _____ Dolgencorp, LLC


**If you found for Saia in Question 1, then answer Question 2 . If
you found for Dolgencorp, LLC in Question 1, then your
deliberations are done.**


2.      We find Saia's compensatory damages to be:


        $_____


**Please sign and date this form.**


_____              _____
        Foreperson                                    Date/time